## UNITED STATES MERCHANTS' & SHIPPERS' INS. CO. v. A/S DEN NORSKE AFRIKA OG AUSTRALIE LINE.

### No. 285.

Circuit Court of Appeals, Second Circuit.
May 29, 1933.

Bigham, Engler, Jones & Houston, of New York City (Henry N. Longley and F. Herbert Prem, both of New York City, of counsel), for appellant.

Haight, Smith, Griffin & Deming, of New York City (Charles S. Haight, John W. Griffin, and Wharton Poor, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The libellant is an American corporation, the underwriter of the Dutch shipper of a parcel of goods, laden in a ship of the respondent, a Norwegian corporation. The ship was upon a voyage from Oslo to China ports, and lifted the parcel in question at Hamburg. When some days out from Colombo she caught fire and became a total loss. The libellant paid the shipper under the policy, and brought this suit in its own name as subrogate. The bill of lading under which the parcel was shipped contained the following clause: "All questions arising under this bill of lading are to be governed by the law of Norway, and to be decided in Oslo." By the last we understand any competent Norwegian court of that city. The respondent appeared specially for the purpose of disputing the jurisdiction, which the judge held to lie in his discretion. He dismissed the libel because he thought the balance of convenience was greatly in favor of a Norwegian trial. The libellant does not dispute that if he was right in point of law, we may not reverse his decree for abuse of discretion; thus the only questions which arise are whether an American underwriter who has paid the loss of a foreign shipper under such a bill of lading may as matter of right sue a foreign owner in an American court, and if so, whether the suit should be stayed until the Norwegian court has decided the controversy.

Both sides concede that had the Dutch shipper itself moved in the suit, jurisdiction would have depended upon the discretion of the court; each party would have been an alien, and the District Court is not obliged to try such cases; its jurisdiction depends upon whether its exercise is essential to justice; whether the libellant is driven to seek it in order to secure any adequate redress at all. Canada Malting Co. v. Paterson S. S., 285 U. S. 413, 52 S. Ct. 413, 76 L. Ed. 837; Charter Shipping Co. v. Bowring, 281 U. S. 515, 50 S. Ct. 400, 74 L. Ed. 1008; The Belgenland, 114 U. S. 355, 5 S. Ct. 860, 29 L. Ed. 152. But the libellant is a citizen and asserts its absolute privilege of resort to its own courts, independently of any inconvenience to the respondent. How far such inconvenience can be recognized, depends upon the local procedure which at times does indeed protect a non-resident from local suit. Courts are maintained to give redress primarily to their own citizens; it is enough if these conform to the conditions set upon their jurisdiction. All this is entirely true, and would be con-

clusive, if the libellant sued in its own right. The question is whether it is equally true, when it sues as subrogate. In general, so all admit, the surety in such a case stands in the place of his principal; his rights are the same; defenses good against the principal are good against him. Phœnix Ins. Co. v. Erie & Western Transp. Co., 117 U. S. 312, 6 S. Ct. 750, 29 L. Ed. 873; U. S. v. American Tobacco Co., 166 U. S. 468, 17 S. Ct. 619, 41 L. Ed. 1081; The City of Brunswick, 1933 A. M. C. 61 (Ct. Cl.); Simpson v. Thomson, 3 App. Cas. 379. The doctrine is too well settled to labor, and the case at bar would fall directly within it, were the question strictly one of right; it is not, but one of remedy. Indeed, it is strictly not even that, for it does not touch what remedies are available, but what tribunals shall be competent to grant any remedies at all; or even more narrowly, whether those concededly so competent, shall exercise their jurisdiction.

The point, so far as we can find, has never before arisen in any court. The nearest decision is Société du Gaz, etc., v. Armateurs Francais, [1926] Sessions Cases, 16. Suit was there brought in a Scotch court by an English underwriter in the name of a French shipper against a French shipowner. The Scotch courts refused jurisdiction, and were affirmed by the House of Lords. How far the result depended on the fact that the real plaintiff was not a Scotchman does not certainly appear, though it was mentioned by some of the judges. Nor can we extract any general doctrine from what was said; certainly it will not serve as a decision upon the facts at bar. At least, we cannot suppose that the accident of procedure was determinative; that is, because the underwriter sued, and we assume was obliged to sue, in the name of the shipper. We should hesitate to decide that questions of jurisdiction depended upon rules as to who must be the formal party. Again, we cannot consider important those cases in which colorable assignments, given to avoid limitations upon jurisdiction, were held not to do so; Goldman v. Furness, Withy & Co. (D. C.) 101 F. 467; Wittig v. Canada S. S. Lines (D. C.) 59 F.(2d) 428; The Lady Drake (D. C.) 1 F. Supp. 317. Such simple evasions certainly could not succeed; they throw no light upon the situation now at bar. In Fairgrieve v. Marine Ins. Co. of London, 94 F. 686 (C. C. A. 8), the underwriter was an alien; the case was clearly one of discretionary jurisdiction.

The libellant's citations are equally be-

side the point. It is quite true that in determining the jurisdiction of the District Court under its diversity jurisdiction, it has been held that it is the citizenship of the subrogate, not of the principal, which counts. Fidelity & Deposit Co., etc., v. Farmers' Bank, 44 F.(2d) 11 (C. C. A. 8). Cf. Claiborne Parish v. Fidelity Dep. Co., etc., 40 F.(2d) 577 (C. C. A. 5). New Orleans v. Gaines, 138 U. S. 595, 11 S. Ct. 428, 34 L. Ed. 1102, may be put in the same class, though properly it was not a case of subrogation at all, but rather of garnishment. But the jurisdiction of the federal courts depends upon the statute (section 41 (1), title 28, USC, 28 USCA § 41 (1) which expressly denies it only to assignees of promissory notes and other choses in action. A surety suing in subrogation is not an assignee, strictly speaking, though his rights are for most purposes the same as though he were, and it may be said, though with some latitude, that equity effects an assignment in his favor. The decisions we have cited go no further than to hold that subrogates are not assignees within the meaning of section 41 (1). Moreover, they do not in any event decide more than that in such cases the court has substantive jurisdiction; they do not affect to hold that jurisdiction must be exercised, regardless of the derivative character of the plaintiff's right. Concededly the District Court had jurisdiction here; would indeed have had it, had the Dutch shipper himself sued. It is not impossible for example that the libellant, had it chosen to sue at law, as it might, should find the exercise of that jurisdiction discretionary. It could avoid the absolute bar that would meet the Dutch shipper, did he sue at law, but that might not be enough; the court might be free in its discretion to decline jurisdiction, so far as anything to the contrary appears in the cases cited.

■ Thus, the point appears to be res nova, and we are obliged to choose between the two results for other reasons than authority. It is to be observed that we need not, and indeed could not, say that the District Court had no jurisdiction; the question is only whether that court must exercise it at all costs; whether the libellant, as a citizen, may insist that his privilege of recourse to his own courts is absolute, that it is not conditional upon any considerations whatever of convenience or mutual advantage. Nor need we hold that the privilege is not absolute when the right is not derivative; or even if derivative, if the relation were imposed in invitum. An underwriter accepts the risk voluntarily;

it is part of his business, undertaken for his own advantage. We do have to decide how far in these circumstances he shall be regarded as subrogate, and how far he may speak in his own right. For most purposes he may not; he can escape from the position which he has in general accepted only because a paramount interest, his citizenship, demands that his privilege shall prevail over all other considerations. However, the reasons which in general subject him to the limitations imposed upon his principal, apply equally to a choice of forum. These are that the owner who makes his contract with the shipper, shall not thereby suffer an increase in his burden by being called upon to respond to more than the shipper could demand. Yet the choice of a court may be more important than many of the express terms of the contract; may indeed be determinative of the outcome. In a case involving the seaworthiness or stowage of a ship, to bear the burden of defending by deposition, or of bringing and maintaining witnesses to a very distant place, as in the case at bar, may in fact cut off the defence altogether; the respondent so asserts here. The shipper would have been obliged to answer this argument; by hypothesis the underwriter need not, he escapes from his vicarious position in a critical particular. Again, several underwriters may have assured the risk. One may be selected to sue, and the others intervene; between them they can put the owner at the greatest disadvantage possible among all the available forums. This too is an added burden upon him.

Against this the underwriter can only answer that as a citizen, it is all immaterial. Why should it be? True, we do not help to a solution by a definition which assumes the point, but we may insist that when the underwriter is claiming an exception to the general doctrine that his rights rise no higher than his principal's, the exception must be justified. It seems to us that his acceptance of a generally derivative position leaves us free to define its limits by practical results; to say that because of these it is just that he should be deemed to have yielded his absolute privilege as a citizen, as he has yielded so much else. Though it is quite true that courts are primarily maintained for the benefit of citizens, access to them is only to secure justice; in this instance by hypothesis justice would deny that access. We can find no reason in the allegiance of the suitor, sufficient to thwart so fundamental an interest.

Decree affirmed.